**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

**ADAM CARNEY,**                                 :

        **Plaintiff**                    :                **CIVIL NO: 3:CV-03-0550**

**v.**                                        :                    **(MANNION, J.)**

**JOSEPH CHESNEY, et al.,**           :

        **Defendants**                :

<u>**MEMORANDUM AND ORDER**</u>

**I. Background and Procedural History.**

    The plaintiff, a state prisoner proceeding *pro se*, commenced this action by filing a complaint on April 2, 2003.  On August 4, 2004, the plaintiff filed an amended complaint.

    The plaintiff alleges that he is of the Rastafarian faith and that his faith forbids the cutting of the hair.  He alleges that he has been issued misconducts based on his refusal to cut his hair.  The plaintiff also claims that he has been denied a diet in conformity with his faith, that he has been denied permission to purchase religious articles, and that Rastafarian inmates have been denied the opportunity to hold a service in the "all faiths" chapel.  The plaintiff claims that the defendants have denied him his right to the free exercise of his religion in violation of the First Amendment, that they have denied him equal protection of the laws in violation of the Fourteenth Amendment, that they have subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and that they have subjected him to double jeopardy in violation of the Fifth Amendment.

The plaintiff's constitutional claims are brought pursuant to 42 U.S.C. §1983. The plaintiff also claims that the defendants have violated the Religious Land Use and Institutionalized Persons Act of 2000, ("RLUIPA"), 42 U.S.C. §2000cc-1 - §2000cc-5.  Finally, the plaintiff claims that the defendants violated 42 U.S.C. §§1985 and 1986.

The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. §636(c).

On October 5, 2004, the defendants filed an answer to the amended complaint.

By order dated January 11, 2005, the court granted the defendants' motion to stay the filing of dispositive motions until after the United States Supreme Court decided *Cutter v. Wilkinson,* 125 S.Ct. 308 (2004)(granting certiorari on the question of whether Congress violated the Establishment Clause by enacting RLUIPA).  On May 31, 2005, the Supreme Court decided *Cutter v. Wilkinson,* 125 S.Ct. 2113 (2005). The Court held that the institutionalized-persons provision of RLUIPA does not, on its face, violate the Establishment Clause.

The parties were granted until July 11, 2005, to file dispositive motions.  On July 11, 2005, the defendants filed a motion for summary judgment, a statement of material facts, a brief and documents in support of that motion.   On July 15, 2005, the plaintiff filed a motion for summary judgment, a statement of material facts, a brief and documents in support of that motion.

On August 2, 2005, the defendants filed a response to the plaintiff's

2

statement of material facts and a brief in opposition to the plaintiff's motion for summary judgment.  On August 5, 2005, the plaintiff filed a response to the defendants' statement of material facts and a brief in opposition to the defendants' motion for summary judgment. On August 19, 2005, the defendants filed a reply brief in support of their motion for summary judgment.

On August 10, 2005, the plaintiff filed a motion for default/judgment.  On August 15, 2005, prior to the plaintiff filing a brief in support of his motion, the defendants filed a response to the plaintiff's motion for default/judgment.  On August 22, 2005, the plaintiff filed a brief in support of his motion for default/judgment, and on September 9, 2005, the defendants filed a brief in opposition to the plaintiff's motion.

On August 11, 2005, the defendants filed a motion for leave to amend their answer to the amended complaint and a brief in support of that motion.  On August 31, 2005, the plaintiff file a brief in opposition to that motion.

This memorandum and order addresses the pending motions in this case.


**II.  Plaintiff's Motion for Default/Judgment.**

The plaintiff contends that the defendants did not timely file their brief in opposition to his motion for summary judgment and that, therefore, he should be granted summary judgment or default judgment against the defendants.

The plaintiff filed his motion for summary judgment, statement of material facts and brief in support on July 15, 2005.  However, those documents and the

3

certificate of service attached to those documents are dated July 8, 2005.  The plaintiff states in his brief in support of his motion for default/judgment that he placed his motion for summary judgment, statement of material facts, and brief and documents in support of his motion in the prison mail on July 8, 2005, but that the defendants' copy of those documents were not mailed until July 11, 2005.  He further states that the documents to the court were not actually mailed until July 15, 2005.  Taking July 11, 2005, as the date he served his documents on the defendants, the plaintiff argues that pursuant to Local Rule 7.6, which requires a brief in opposition to be filed with fifteen days after service of the movant's brief, the defendants' brief in opposition was not timely filed.

Defense counsel states that the computation of the filing date for the defendants' brief in opposition to the plaintiff's motion for summary judgment was of particular concern to her because the certificate of service attached to the plaintiff's motion and supporting documents was dated July 8, 2005, yet those documents were not postmarked until July 13, 2005.  Defense counsel points out that the docket entry for the plaintiff's brief in support of his motion for summary judgment, *Doc. 71*, provides: "Brief in Opposition due by 8/2/2005." Defense counsel argues that, regardless of when the plaintiff actually mailed his documents to the defendants, the controlling response date is the date calculated by the court's Electronic Case Filing system and that the defendants filed their brief in opposition to the plaintiff's motion on that date -  August 2, 2005.  Defense counsel also contends that the plaintiff has not asserted how he

4

was prejudiced by any delay in the filing or receipt of the defendants' documents in opposition to his motion for summary judgment.

Contrary to the date set forth on the docket, we conclude that pursuant to Local Rule 7.6, the due date for the filing of the defendants' brief in opposition to the plaintiff's motion for summary judgment was August 1, 2005.  We take July 13, 2005, the postmark date on the plaintiff's documents, as the date the plaintiff's brief was served on the defendants. *See* Fed.R.Civ.P. 5(b)(2)(B)("Service by mail is complete on mailing.").  Adding three days, pursuant to Fed.R.Civ. 6(e), to the fifteen days provided for in Local Rule 7.6, and excluding Sunday, July 31, 2005, from the computation pursuant to Fed.R.Civ.P. 6(a), the defendants' brief in opposition was due on or before August 1, 2005.

The defendants' brief was not filed until August 2, 2005.  However, the one day delay has not prejudiced the plaintiff and provides no basis to enter either a default judgment or summary judgment against the defendants.  Accordingly, the plaintiff's motion for default/judgment will be denied.


## III.  Defendants' Motion for Leave to Amend.

The defendants are seeking leave to amend their answer to paragraphs 66 and 69 of the plaintiff's amended complaint.

Paragraph 66 of the plaintiff's amended complaint reads: "On 2-19-04 P.R.C. conducted a hearing and determined that plaintiff will remain in the R.H.U.

pending the outcome of his request for hair exemption, that had already been approved prior to being transferred, and also in direct violation of DC-ADM-819I.2 (D.C. policy governing religious requests)." Paragraph 69 of the plaintiff's amended complaint reads: "Def. Kneiss, Demming, McGrady, Jones, and Lavan, on 2-19-04, knew or should have known that their actions were violating plaintiff's rights."

In their answer, the defendants responded to paragraphs 65-69 as "admitted."   The defendants contend that paragraphs 66 and 69 were inadvertently included in a string answer as admitted when they should have been denied.  The defendants are seeking to file an amendment to their answer to deny paragraphs 66 and 69.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).  In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court identified factors to be considered when ruling on a motion to amend:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.* In this Circuit prejudice to the non-moving party is the touchstone for denial of leave to amend. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).  "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Id.*

The plaintiff opposes the defendants' motion for leave to amend their answer. The plaintiff contends that he will be prejudiced if the defendants are granted leave to amend their answer.  He states that if leave to amend is granted the case will be delayed and that he will have to file a second amended complaint.

The plaintiff has not articulated precisely how he will be prejudiced if leave to amend is granted.  He has not, for example, asserted that he decided not to pursue a particular line of discovery on the basis of the defendants' admissions to paragraphs 66 and 69 of his amended complaint.  There is no reason why the plaintiff would have to file a second amended complaint if leave is granted to the defendants to amend their answer.

Finding no prejudice to the plaintiff, we will grant the defendants' motion for leave to amend their answer to the plaintiff's amended complaint.

## IV.  Summary Judgment Motions.

7

**A. The Defendants' Motion for Summary Judgment.**

In their motion for summary judgment, the defendants only address the plaintiff's First Amendment free exercise and RLUIPA claims.  They do not address the plaintiff's Eighth Amendment cruel and unusual punishment claim, the Fifth Amendment double jeopardy claim, the Fourteenth Amendment equal protection claim, or the plaintiff's claims pursuant to §§1985 and 1986.  Despite the defendants' failure to do so, two of these claims can be dismissed *sua sponte* by the court for the plaintiff's failure to state a claim upon which relief can be granted.

Initially, the plaintiff alleges in his amended complaint that "[d]efendants violated plaintiffs rights not to be subjected to cruel and unusual punishment protected under U.S. Const. Amend. 8, by plaintiffs continued punishment and placement in disciplinary custody at the hands of defendants, thus injuring plaintiff in his person and property."

With respect to this claim, the Supreme Court has held that the Eighth Amendment requires prison officials to maintain "humane conditions for prisoners" through ensuring that "inmates are provided with adequate food, clothing, shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)(*citing DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 198-199 (1989)); *Rice v. Sobitor,* No. 03-5178, 2004 U.S. Dist. LEXIS 2902, *8-9 (E.D.Pa. Jan. 16, 2004). To make out a claim based on the conditions of his confinement, the inmate must allege:

8

(1) the alleged deprivation was "sufficiently serious" that it resulted in "the denial of 'the minimal civilized measure of life's necessities'"; and

(2) the state officials' actions constituted "deliberate indifference" to the inmate's conditions.

*Rice,* at \*9 (*citing Farmer,* 511 U.S. at 834; *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). "Extreme deprivations are required to make out a conditions-of-confinement claim [and] ... routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillan,* 503 U.S. 1, 9 (1992) (*citing Rhodes v. Chapman,* 452 U.S. 337, 346 (1981)).

Here, the plaintiff has not alleged that he was deprived of food, clothing, shelter, or medical care while confined in disciplinary custody, nor has he alleged facts that could constitute a "denial of the minimal civilized measure of life's necessities." Therefore, the plaintiff has failed to state a valid Eighth Amendment claim and his complaint will be dismissed to this extent.

Moreover, the plaintiff alleges in his amended complaint that "[d]efendants violated plaintiffs rights not to be subjected to double jeopardy for repeatedly punishing plaintiff for the same offense, thus, injuring plaintiff in his person and property."

With respect to this claim, administrative proceedings based upon a violation of prison disciplinary rules may implicate due process protection, but they do not place an offender "in jeopardy" for purposes of the double jeopardy clause of the Fifth Amendment.  *See Robinson v. Vaughn*, 1993 WL 451495 (E.D.Pa.) *(citing Kerns v. Parrat*, 672 F.2d 690, 691 (8th Cir. 1982)(prison administrative discipline

9

does not bar subsequent criminal prosecution for the same offense); *United States v. Stuckey*, 441 F.2d 1104, 1105-06 (3d Cir.)(administrative discipline and subsequent criminal prosecution of prison inmate arising out of same incident did not violate double jeopardy), *cert. denied*, 404 U.S. 841 (1971).

Therefore, the plaintiff's Fifth Amendment double jeopardy claim will also be dismissed.

### 1. Summary Judgment Standards.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party."  *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003).  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-

10

moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

### 2. Undisputed Facts.

The following facts are not in dispute for purposes of the defendants' motion for summary judgment:

The Department of Corrections' Inmate Hygiene and Grooming Policy, DC-ADM 807, governs the length of an inmate's hair. *Defendants' Statement of Material Facts at ¶14 and the Plaintiff's Opposition to Defendants' Statement of Material Facts at ¶14.* Pursuant to the policy, permitted male hairstyles include hair that does not fall below the top of the collar in length and afro styles not longer than four inches. *Id.* Beards and goatees no longer than three inches are permitted as are mustaches and side burns, provided they are kept neat and clean. *Id.*

The Department of Corrections' Policy Statement regarding religious activities, DC-ADM 819, establishes the procedure that an inmate must follow in order to receive a religious accommodation. *Id.* at ¶16. A request for a religious accommodation must be submitted to the Facility Chaplaincy Program Director (FCPD). *DC-ADM 819* at ¶VI.G.2.a. The inmate is required to obtain

11

and provide to the FCPD written information from his outside faith group, including any publications that describe the goals, beliefs, and practices of the group. *Id.* at ¶VI.G.2.c.  The request for a religious accommodation is reviewed by the Religious Accommodation Review Committee. *Id.* at ¶VI.G.2.d.  The Committee makes a recommendation to the Regional Deputy Secretary who then either approves or disapproves the request and notifies the Director of the Bureau of Inmate Services of the decision. *Id.* at ¶VI.G.2.e.  The Director of the Bureau of Inmate Services then informs the Facility Manager and the FCPD. *Id.* at ¶VI.G.2.f.  The FCPD is responsible for informing the inmate of the outcome of his request.  *Id.*  An inmate may file a grievance regarding the denial of an accommodation.  *Id.* at ¶VI.G.2.g.

On or about May 1, 1998, the plaintiff requested a exemption to the hair length requirement of the Grooming Policy.  *Plaintiff's Amended Complaint at ¶11 and the Defendants' Answer to the Plaintiff's Amended Complaint at ¶11.* On June 9, 1998, defendant Varner denied the plaintiff's requested exemption on the basis that the plaintiff had not provided documentation concerning his participation in the Rastafarian faith. *Id.* at ¶12.   On April 3, 1999, the plaintiff filed a grievance regarding being punished and harassed for adhering to his religious beliefs. *Id.* at ¶13.  The plaintiff also requested another exemption from the Grooming Policy which request was denied by defendant Piazza on the basis that the plaintiff had failed to provide documentation.  *Id.*

In April of 2002, the plaintiff submitted a Religious Accommodation Request

form seeking an exemption from the grooming policy based upon his Rastafarian religious beliefs. *Defendants' Statement of Material Facts at ¶21 and the Plaintiff's Opposition to Defendants' Statement of Material Facts at ¶21.* After the plaintiff submitted his request, the FCPD, Chaplain Ritchey, met with the plaintiff to discuss his accommodation request and his religious beliefs. *Id.* at ¶ 22. Chaplain Ritchey recommended that the plaintiff's request for an accommodation be denied. *Id.* The reason stated by Chaplain Ritchey for that recommendation was that the plaintiff takes Catholic mass and communion when he is not locked up in the RHU and that he does not believe that the plaintiff's request is a sincere religious request. *Doc. 67, Exhibit 3, Attachment 3.*

In addition to Chaplain Ritchey, other staff at SCI-Retreat reviewed the plaintiff's religious accommodation request and they unanimously voted to recommend that the plaintiff's request for a hair exemption be denied. *Defendants' Statement of Material Facts at ¶23 and the Plaintiff's Opposition to Defendants' Statement of Material Facts at ¶23.* On June 6, 2002, the plaintiff was informed that his request for an exemption from the grooming policy was denied. *Id.*

In July of 2003, the plaintiff submitted another Religious Accommodation Request Form. *Id.* at ¶25. He sought an exemption to the grooming policy, a vegetarian diet and weekly Rastafarian worship services and a Rastafarian chaplain. *Id.* at ¶25. Chaplain Ritchey recommended that the plaintiff's request

13

for accommodations be denied. *Doc. 67, Exhibit 1, Attachment G.* The reason stated by Chaplain Ritchey for that recommendation was that the plaintiff was involved with the Catholic community prior to his last RHU lockup, that he attended rosary, mass and small group gatherings with the Catholic priest, that he does not believe that the plaintiff's requests are sincere religious requests, that the plaintiff may use the alternative protein diet and items from the commissary, and that the plaintiff has the option to practice his faith in the privacy of his own cell. *Id.*

In addition to Chaplain Ritchey, other staff at SCI-Retreat reviewed the plaintiff's religious accommodation requests and they unanimously voted to recommend that the plaintiff's requests be denied. *Defendants' Statement of Material Facts at ¶27 and the Plaintiff's Opposition to Defendants' Statement of Material Facts at ¶27.* The Religious Accommodation Committee recommended that the plaintiff's requested accommodations be denied on the basis that the plaintiff may choose from the alternative protein offered at mainline and supplement with commissary, that Rastafarians may attend scheduled Protestant worship services, and that the plaintiff may practice his religion in the privacy of his own cell. *Doc. 67, Exhibit 2, Attachment D.* Deputy Secretary Vaughn concurred with the recommendation of the Religious Accommodation Committee. *Id.* The plaintiff was informed that his request for religious accommodations were denied. *Defendants' Statement of Material Facts at ¶27 and the Plaintiff's Opposition to Defendants' Statement of Material Facts at ¶27.*

In January of 2004, the plaintiff again submitted a Religious Accommodation Request Form, seeking an exemption from the Grooming policy, a vegetarian diet, weekly Rastafarian worship and an employed Rastafarian chaplain. Chaplain Ritchey recommended that the plaintiff's requested accommodations be denied and he noted that the plaintiff's sincerity is in question. *Doc. 67, Exhibit 2, Attachment E.* Although three other staff members also recommended that the plaintiff's requests be denied, two staff members recommended that the plaintiff be granted a haircut exemption. *Id.* Deputy Superintendent Erickson noted his belief that the plaintiff's confinement in the Restricted Housing Unit for fourteen months mostly because of his refusals to cut his hair shows his sincerity. *Id.* The plaintiff was granted a hair length exemption. *Id.*

In March of 2004, the plaintiff submitted a Religious Accommodation Request Form seeking a beard length exemption from the Grooming policy. *Id.* at ¶32. In June of 2004, the plaintiff's request for a beard length exemption was denied. The stated basis for that decision was that a beard is not a required tenet of the Rastafarian faith. *Doc. 67, Exhibit 2, Attachment F.*

In July of 2004, the plaintiff again submitted a Religious Accommodation Request Form seeking a vegetarian diet prepared without salt, vinegar, products such as mayonnaise, mustard, ketchup, BBQ sauce, relish, pickles, or any form of grape product. *Doc. 67, Exhibit 2, Attachment G.* The plaintiff claimed that the alternative protein diet was not sufficient since many of the meals are prepared with vinegar products and all of the meals are prepared with salt. *Id.* In

15

November of 2004, the plaintiff's request was denied with the stated basis for that denial being security concerns. *Id.*

In June of 2005, pursuant to another religious accommodation request, the plaintiff was granted a provisional beard length exemption to the Inmate Grooming Policy. *Defendants' Statement of Material Facts at ¶36 and the Plaintiff's Opposition to Defendants' Statement of Material Facts at ¶36.* This exemption is in effect until the Religious Accommodation Committee renders a final decision on the plaintiff's request. *Id.*

Before we address the merits of the plaintiff First Amendment and RLUIPA claims, we address the defendants' contentions that certain of the plaintiff's claims are barred by the statute of limitations and that the plaintiff's claims for injunctive relief are moot.

### 3. Statute of Limitations.

The plaintiff filed his original complaint in this case on April 2, 2003.  The defendants contend that any of the plaintiff's claims based on incidents that occurred prior to April 2, 2001, are barred by the statute of limitations and that, therefore, the plaintiff's claims against defendants Varner, Paizza, Lavan, and Mack should be dismissed as untimely.

Although the defendants contend that all of the plaintiff's claims that accrued prior to April 2, 2001, are barred by the statute of limitations, the defendants have only presented argument as to the statute of limitations applicable to the

16

plaintiff's §1983 claims.[1]  Accordingly, we only address the statute of limitations as to the plaintiff's §1983 claims.

The statute of limitations for a 42 U.S.C. §1983 action is the state statute that limits actions for personal injuries.  *Wilson v. Garcia*, 471 U.S. 361 (1985).  In Pennsylvania, the applicable statute is 42 Pa.C.S. § 5524(2), which defines a two year limitations period.  *Fitzgerald v. Larson*, 769 F.2d 160 (3d Cir. 1985).  The limitations period begins to run when the plaintiff knows or had reason to know of the injury that constitutes the basis for the action. *Sandutch v. Muroski*, 684 F.2d 252 (3d Cir. 1982).

We agree with the defendants that any of the plaintiff's 42 U.S.C. §1983 claims that accrued prior to April 2, 2001, are barred by the statute of limitations. Accordingly, the defendants will be granted summary judgment on those claims.

We note that we are not granting summary judgment on all §1983 claims against defendants Varner, Paizza, Lavan, and Mack.  The amended complaint contains allegations that defendant Paizza (¶18), defendant Lavan (¶¶69 & 71),

---

1.  Even were we to construe the defendants' statute of limitations argument to apply to the plaintiff's RLUIPA claims, we would not accept the defendants' contention that all RLUIPA claims that accrued prior to April 2, 2001, are barred by the statute of limitations. A four-year rather than a two-year statute of limitations applies to RLUIPA claims. *See* 28 U.S.C. §1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues."). *See also United States v. Maui County,* 298 F.Supp.2d 1010, 1013(D.Haw. 2003)(stating that four-year statute of limitation applies to RLUIPA claim).

and defendant Mack (¶¶18 & 22) participated in events underlying the plaintiff's claims after April 2, 2001.  The amended complaint also contains allegations that refer to "all defendants" or "the defendants." *See* ¶¶53, 54, 55, 64, 73, 75, 76 & 77.  Those allegations can reasonably be construed to apply to events after April 2, 2001, and can reasonably be construed to apply to defendants Varner, Paizza, Lavan, and Mack.

### 4. Injunctive Relief.

In February of 2004, the plaintiff's request for a hair length exemption was granted, and in June of 2005, the plaintiff's request for a beard length exemption was provisionally approved.  The defendants contend that the plaintiff's claims for injunctive relief regarding an exemption from the grooming policy regarding his hair and beard are moot.

Article III of the Constitution provides that the judicial power of the United State shall extend to "cases" and "controversies." U.S. Constitution, art. III, §2; *Rosetti v. Shalala*, 12 F.3d 1216, 1223 (3d Cir. 1993).   Federal courts lack authority to decide moot cases.   *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964).  If events occur during litigation which eliminate the plaintiff's personal stake in the outcome of the suit, the case must be dismissed as moot. *Rosetti*, *supra*, 12 F.3d at 1224.

The voluntary cessation of a policy or practice may moot a case. *Thompson v. U.S. Dept. of Labor*, 813 f.2d 48, 51 (3d Cir. 1987).  However, the standard for

"determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.* 528 U.S. 167, 189 (2000)(quoting *United States v. Concentrated Phosphate Export Assn*, 393 U.S. 199, 203 (1968)).   The party asserting mootness bears a heavy burden of persuading the court that the challenged conduct can not reasonably be expected to start up again. *Id.*

We agree with the defendants that since the plaintiff has been granted a hair length exemption his claim for injunctive relief in the form of an exemption from the grooming policy regarding his hair is moot.  However, since the plaintiff's request for a beard length exemption has only provisionally been granted, we conclude that his claim for injunctive relief in the form of an exemption from the grooming policy regarding his beard is not moot at this time.

### 5. First Amendment Free Exercise Claims.

The defendants are seeking summary judgment on the plaintiff's First Amendment free exercise claims.

### a. Applicable Law.

The First Amendment provides that "Congress shall make no law respecting

19

an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987)(citation omitted).  In order to establish a Free Exercise Clause claim, the plaintiff must establish that the defendants' actions contravene his sincere religious beliefs. *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The court has identified several factors to consider when determining the reasonableness of a regulation which impinges on a constitutional right, including: 1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify it; 2) whether there are alternative means of exercising the right that remain open to prison inmates; 3) the impact that an accommodation of the asserted right will have on guards and other inmates and on the allocation of prison resources generally; and 4) whether there are alternatives that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. *Id.* at 89-91.

### b.  Sincerity of the Plaintiff's Beliefs.

The defendants contend that they legitimately questioned whether the

plaintiff held sincere religious beliefs that he should not cut his hair.  Chaplain Ritchey asserts that he has known the plaintiff to be involved with the Catholic community at SCI-Retreat and that he has noted the plaintiff's attendance at Catholic Masses and rosary services. *Doc. 67, Exhibit 3 at* ¶2. Chaplain Ritchey states that he has had conversations with the plaintiff about the Bible, Christianity, and other spiritual matters. *Id.* at ¶3.  He states that the plaintiff made statements to him that led him to believe that the plaintiff was not sincere about Rastafarian beliefs, that the plaintiff specifically referred to the "system" and that the plaintiff suggested that he needed to use the haircut exemption process to achieve a non-religious goal that he desired.  Chaplain Ritchey states that from his conversations with the plaintiff, the plaintiff's attendance at Catholic Masses and services, and his overall observations of the plaintiff's behavior, he concluded that the plaintiff was not sincere about his need for a haircut exemption based on Rastafarian beliefs. *Id.* at ¶7.

On the other hand, the plaintiff contends that he has a sincere religious belief that cutting his hair is prohibited by his religion.  He contends that the prohibition on cutting the hair and beard is a requirement of the Rastafarian faith.  The plaintiff submitted documentation to the defendants regarding the tenets of his faith.

According to the plaintiff, since there are no services for the Rastafarian faith at SCI-Retreat, he asked the Catholic Chaplain if he could attend the chapel during Catholic services. *Doc. 64, Exhibit 4 (plaintiff's deposition) at 39.*  The

21

plaintiff testified that the Catholic Chaplain agreed to allow him to attend the chapel during Catholic services and that he would sit in the back of the chapel. *Id.* He testified that he did not attend the Catholic Mass for the Catholic Mass per se; but, rather, he wanted to use the chapel and pray so he would go to the chapel during the Catholic service, sit in the back, be quiet and say prayers and meditate. *Id.* at 39-40.  He testified that he wanted to use the chapel because there was a lot of noise on the block and he had a problem having cell time with his celly. *Id.* at 39.  He testified that he never took communion and that although he was present in the chapel during rosary service he was not partaking of the service. *Id.* at 39-40.

The plaintiff also testified that he never had any lengthy conversations with Chaplain Ritchey and that he does not recall having a conversation with Ritchey where he made a reference to working the system. *Id.* at 37-38.  He also has stated that he has never made any statements to any person that would suggest that he was attempting to manipulate the exemption process. *Doc. 22*[2] *at 6.*

The defendants themselves contend that inmates with religious beliefs not

---

2.  Document 22 is the plaintiff's reply brief in support of an earlier motion for a preliminary injunction.  The plaintiff verified, pursuant to 28 U.S.C. § 1746, that the statements he made in that reply brief are true and accurate to the best of his knowledge, information and belief. *Doc. 22 at 11.* In his brief in opposition to the defendants' motion for summary judgment the plaintiff stated that he was incorporating statements made in former pleadings and motions. *Doc. 76 at 2.*

represented by a major faith group are encouraged to attend major faith group services that closely follow their teachings and beliefs. *Defendants' Statement of Material Facts at ¶7.* Thus, the fact that the plaintiff attended Catholic services alone would not seem to provide a reasonable basis to doubt the plaintiff's sincerity in the belief that he should not cut his hair. Given that the plaintiff denies having any lengthy conversations with Chaplain Ritchey and that he has denied making any statements that would suggest that he was attempting to manipulate the exemption process, we conclude that there is a material factual dispute about the sincerity of the plaintiff's beliefs regarding cutting of hair and about whether the defendants had a legitimate reason to conclude that the plaintiff did not have a sincere religious belief that he should not cut his hair.

The defendants also contend that SCI-Retreat and SCI-Dallas officials legitimately questioned the sincerity of the plaintiff's belief that he must eat a vegetarian diet. The defendants contend that the plaintiff continued to eat meat, fish and eggs whenever they were on the menu. In support of that assertion that defendants have submitted a memorandum dated August 7, 2003, from defendant Erickson in which Erickson states that the literature supplied by the plaintiff mandates a strict vegetarian diet but that the plaintiff's sincerity is in question because the plaintiff continues to eat meat, fish and eggs whenever they are on the menu. *Doc. 67, Exhibit 2, Attachment D.* As verification for his statement, Erickson cites to an incident report from Officer Zabretsky. *Id.* In the incident report, Officer Zabretsky stated that on August 7, 2003, he served the

23

plaintiff a lunch tray which contained meatsauce casserole, that fifteen minutes later he collected the tray and observed that the tray was empty of all of the meatsauce casserole. *Id.* Officer Zabretsky further stated that Reverend Ritchie witnessed this, that the plaintiff has no cell mate, and that he works on the block on a frequent basis and has always served the plaintiff the regular no-pork meal tray which the plaintiff has always accepted and consumed. *Id.*

The plaintiff contends, on the other hand, that he did not continue to eat meat, fish and eggs.  He testified that he trades items with other inmates. *Doc. 67, Exhibit 4 at 56.*  He testified that he will take the meat on his tray and trade it to somebody else for vegetables. *Id.*  Given the plaintiff's testimony there is a genuine factual dispute about whether the plaintiff continued to eat meat, fish and eggs.

The defendants also cited testimony from the plaintiff, at his December 22, 2003, deposition, to support their contention that they reasonably questioned the plaintiff's sincerity with regard to his diet request.  At his deposition, the plaintiff testified that the alternative diet has barbeque soy, soy chili and a lot of stuff made with vinegar, pickles, barbeque sauce, ketchup and mustard and that this diet is not a sufficient substitute for the diet required by his faith. *Id.* at 55.  The plaintiff was then asked: "And you would like a diet that does not have any of the vinegar, grapes, raisins, et cetera?" *Id.*  The plaintiff responded:

> A. I would, but I don't have to have it. Do you see what I'm saying?
> I didn't want to - that's not an issue in this suit at this point -

24

Q. Okay.

A. - right now.  But that's another thing that could be raised.  But I can make do with what I get.  I get a regular tray.  Well, I get a cardiac tray for health reasons.  And what I can trade with other inmates I trade to benefit me.

Q. To benefit you in what way?

A. Well, like meat.  Like, I'll trade meat on my tray and trade it to somebody else for vegetables.

Q. And you're aware that trading food is — it violates the rules?

A. Yes, it does.  But you know, I have to survive.

*Id.* at 56.

Although the plaintiff's testimony may cast some doubt on his sincerity, the defendants have not argued or established that they were actually aware of the plaintiff's deposition testimony when they made their decisions to deny the plaintiff's requests for a special diet.

Moreover, with respect to the plaintiff's first diet request, although Chaplain Ritchey and Deputy Superintendent Erickson questioned the plaintiff's sincerity, the stated reason for the recommendation to deny the plaintiff's diet request was not that the plaintiff's belief was not sincere but, rather, that the plaintiff may choose from the alternative protein offered at mainline and supplement with commissary. *Doc. 67, Exhibit 2, Attachment D.*

With respect to the plaintiff's second request for a diet accommodation, Chaplain Ritchey continued to question the plaintiff's sincerity. *Doc. 67, Exhibit 2, Attachment E.* However, the defendants have not provided a document which

25

sets forth the basis of the denial of that diet request. *Id.*  The plaintiff's haircut exemption was, however, granted at that time. *Id.*  It is not clear why if the decisionmaker believed that the plaintiff was sincere in his Rastafarian belief about cutting his hair he was not sincere in his Rastafarian believe about his diet.

With regard to the plaintiff's third diet request, the stated reason for the recommendation for denying the plaintiff's request was security concerns, not a question about the plaintiff's sincerity. *Doc. 67, Exhibit 2, Attachment G.*  In fact, one of the staff members noted that he did not doubt the plaintiff's sincerity. *Id.*

We conclude that there are genuine factual disputes about whether the plaintiff had, or now has, a sincere religious belief that he should eat the special diet he has requested and about whether the defendants legitimately or reasonably concluded that the plaintiff was not sincere with respect to his dietary requests.

The defendants do not argue that plaintiff did not or does not have a sincere religious belief with regard to his request for a congregational Rastafarian worship service and his request for a Rastafarian chaplain.  Nor have the defendants argued that the plaintiff did not have a sincere religious belief with respect to his request for an exemption for the beard length

26

requirement.[3]

### c. Analysis of the *Turner* Factors.

Even assuming the sincerity of the plaintiff's religious beliefs, the *Turner* factors weight in favor of the defendants. Although the defendants do not explicitly discuss *Turner*, they, in essence, discuss three of the four *Turner* factors.

_____

3. The stated reason the defendants' initial denial of the plaintiff's request for a beard exemption was that a beard is not a required tenet of the Rastafarian faith. We note that it is not this court's function, nor the function of a factfinder, to determine whether the plaintiff or the defendants more correctly perceives the commands of Rastafarianism. See *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 716 (1981)("[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith."). "Intrafaith differences . . . are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses." *Id.* at 715. "Courts are not arbiters of scriptural interpretation." *Id.* at 716. *See also Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989)("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigant's interpretations of those creeds."). Just as it is not within the court's function to determine the tenets of Rastafarianism, it is likewise not the state's function to do so. Although the state may deny a religious accommodation on the basis of a lack of sincerity, it may not do so on the basis that a belief is not a valid interpretation of a particular religion. Moreover, even if having a beard is not a requirement of Rastafarianism, conduct motivated by beliefs which are sincerely held and religious in nature implicate the Free Exercise Clause regardless of whether the conduct is mandatory. *Tenafly Eruv Assoc. v. Borough of Tenafly,* 309 F.3d 144, 171 (3d Cir. 2002)("Neither the Supreme Court nor our Court has intimated that only compulsory religious practices fall within the ambit of the Free Exercise Clause.").

With respect to the first *Turner* factor, the defendants contend that there were security concerns regarding the plaintiff's request for a hair length exemption. They assert that in the past the plaintiff has received misconducts for hiding gambling tickets in various places such as his mouth, ear, inside his sweat pants and in his underwear.   The defendants assert that DOC-ADM 807 operates to provide a safe, clean and healthy environment for inmates and staff. *Defendants' Statement of Material Facts at ¶15.*   They state that items of contraband have been found in inmates' hair and beards, including but not limited to drugs and small sharp items that could be used as weapons. *Id.*  They further state that based on safety and security concerns, inmates' hair is frequently searched by the institutional staff and longer hair is more difficult and time consuming to search. *Id.*  In addition, they state that inmates with long hair and beards also raise security concerns regarding gang and homosexual activity as well as attempts to change or alter their appearance for identification purposes and escapes. *Id.*  They further state that longer hair also presents health risks to the closed inmate and staff population given the potential to increase the risk of lice and other infectious disease. *Id.*  The concerns cited by the defendants have been held to be legitimate penological concerns. *See e.g. Wilson v. Schillinger*, 761 F.2d 921 (3d Cir. 1985).

With respect to the second *Turner* factor, the defendants also contend that the plaintiff was afforded means to practice his religious beliefs.  They state that the plaintiff was permitted to pray in his cell, to correspond with and to have

28

priests, ministers, chaplains or religious advisors visit him at prison, to possess religious books and materials in his cell, and to possess religious symbols such as beads, prayer rugs, hats and pendents consistent with prison security policies.  They further contend that any special dietary needs are provided by the DOC's alternative menus and that the plaintiff is permitted to buy additional items at the prison commissary.

With respect to the third *Turner* factor, the defendants contend that providing separate services for individual religious denominations or sects would have an adverse impact upon security at the prison because additional correctional employees would be needed to provide security at each additional service and that providing additional services would stretch prison resources to the breaking point.  The defendants also contend that preparing a specialized diet for one inmate would cause an undue hardship on the culinary department of the prison; would set a precedent affecting various sects and denominations of religious groups; and would require an inordinate amount of resources to accommodate them in a manner consistent with prison security.

With respect to the final *Turner* factor, the Supreme Court has found that the absence of ready alternatives is evidence of the reasonableness of a prison regulation. See *Block v. Rutherford, supra* 468 U.S., at 587, 104 S.Ct., at 3233. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test: prison officials do not

have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. See *ibid.* But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. *Turner v. Safley*, 482 U.S. 78, 90-91(1987).

Here, the defendants have not discussed the absence of any alternatives to the regulations at issue.  However, in connection with his free exercise claim, the burden is on the plaintiff to disprove the validity of the challenged prison action. *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003).  The plaintiff has not identified any obvious, easy alternatives which can accommodate his rights at a *de minimis* cost to the penological system.  As such, the defendants are entitled to judgment as a matter of law on the plaintiff's free exercise claims.

We next turn to the plaintiff's claims under RLUIPA

### 6. RLUIPA Claims.

The defendants contend that they are entitled to summary judgment on the plaintiff's RLUIPA claims.

### a. Statutory Provisions.

RLUIPA, enacted on September 22, 2000, provides:

(a) GENERAL RULE. – No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil

Rights of Institutionalized Persons Act (42 U.S.C. 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1.  42 U.S.C. §2000cc-1 applies in any case in which "(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several states, or with Indian tribes." 42 U.S.C. §2000cc-1.  A person may assert a violation of RLUIPA "as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. §2000cc-2(a). RLUIPA defines "government" to mean:

(i) a State, county, municipality or other governmental entity created under the authority of a State;

(ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and

(iii) any other person acting under color of State law; and

(B) for purposes of sections 4(b) and 5 [42 USCS §§2000cc-2(b) and 2000cc-3] includes the United States, a branch, department, agency, instrumentality, or official of the United States, and any other person acting under color of Federal law."

42 U.S.C. §2000cc-5(4).  Under RLUIPA if a plaintiff produces prima facie evidence to support a Free Exercise clause violation, "the government shall bear

31

the burden of persuasion on any element of the claim except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burden's the plaintiff's exercise of religion." 42 U.S.C. §2000cc-2(b).   RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000cc-5(7).   RLUIPA provides that it "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution."   42 U.S.C. §2000cc-3(g).

### b.  Substantial Burden

The defendants contend that the plaintiff's exercise of his religion has not been substantially burdened.

Under RLUIPA, a burden is substantial when it influences the adherent to act in a way that violates his sincerely held religious beliefs. *Williams v. Bitner*, 359 F.Supp.2d 370, 375 (M.D.Pa. 2005)(Conner, J.).

In the instant case, the plaintiff contends that his faith forbids that he cut his hair. The plaintiff has received misconducts and was sanctioned with disciplinary custody for refusing to cut his hair.  We conclude that a reasonable trier of fact could conclude that punishing the plaintiff for refusing to cut his hair placed a substantial burden on the exercise of his religion. *See Williams, supra,* 359 F.Supp.2d at (holding that issuance of a misconduct and sanction of cell

32

restriction to a prisoner food service worker who refused to serve pork on religious grounds could constitute a substantial burden on the inmate's beliefs); *Warsoldier v. Woodford,* 418 F.3d 989, 996 (9th Cir. 2005)(holding that because the California Department of Corrections' grooming policy puts significant pressure on inmates to abandon their religious beliefs by cutting their hair the policy imposes a substantial burden on the prisoner-plaintiff's religious practice).

Similarly, we conclude that a reasonable trier of fact could conclude that refusing to serve a prisoner a diet in conformity to his religious beliefs places a substantial burden on the exercise of his religion. *See Gordon v. Pepe*, No.Civ.A. 00-10453-RWZ, 2004 WL 1895134 at *4 (D.Mass Aug. 24, 2004)(holding that denying Rastafarian inmate diet in accordance with his religious beliefs may amount to a substantial burden on his religious exercise under RLUIPA).

Likewise, refusing to provide an inmate with an opportunity to worship with others of his faith may amount to a substantial burden on the inmate's exercise of his religion. *See Small v. Lehman,* 98 F.3d 762, 764 (3d Cir. 1996)(applying the substantial burden test under the Religious Freedom Restoration Act and stating that when the only worship service available to a prisoner is under the guidance of someone whose beliefs are significantly different from or obnoxious to his, the prisoner has been effectively denied the opportunity for group worship and the result may amount to a substantial burden on the exercise of his religion).

### c. Compelling Interest and Least Restrictive Means.

The defendants bear the burden of proving that any substantial burden on the plaintiff's exercise of his religion is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. §2000cc-1(a); 42 U.S.C. §2000cc-2(b); 42 U.S.C. §2000cc-5(2).

The defendants contend that they had compelling government interests in denying the plaintiff's requested accommodations.

The defendants contend that there were security concerns regarding the plaintiff's request for a hair length exemption. The defendants also contend that providing separate services for the plaintiff and any other Rastafarian inmates would have an adverse impact upon security at the prison because additional correctional employees would be needed to provide security at each additional service and that providing additional services would stretch prison resources to the breaking point. The defendants also contend that the preparing of a specialized diet for one inmate would cause an undue hardship on the culinary department of the prison, would set a precedent affecting various sects and denominations of religious groups, and would require an inordinate amount of resources to accommodate them in a manner consistent with prison security.

"Maintaining institutional order and security is certainly a compelling interest." *Williams, supra,* 359 F.Supp.2d at 376. For purposes of the instant motion we assume *arguendo* that the other reasons put forth by the defendants

34

for denying the plaintiff's accommodations - i.e. costs of providing additional security for separate services, hardship on the culinary department in providing a special diet, and the costs of providing a special diet to the plaintiff and other inmates - are compelling government interests.  *But see* Derek L. Gaubatz, *RLUIPA at Four: Evaluating the Success and Constitutionality of RLUIPA's Prisoner Provisions*, 28 Harv.J.L.& Pub.Pol'y 501, 545-46 (2005)(arguing that the cost of providing a religious accommodation, the fear of a flood of requests for similar accommodations, and the risk that other prisoners may be jealous if a particular prisoner's religious exercise is accommodated may be legitimate and important government interests but are not compelling government interests). However, the defendants have not addressed whether the denial of the plaintiff's requested accommodations is the least restrictive means of furthering the interests they have set forth.  The defendant cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.  *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005). Accordingly, the defendants are not entitled to summary judgment on the plaintiff's RLUIPA claims.


### 7. Qualified Immunity

The defendants contend that "[e]ven if this Court should conclude that defendants' actions somehow violated Carney's constitutional rights, they are

entitled to qualified immunity." Doc. 68 at 17. Since the defendants only address the plaintiff's free exercise claim, we do not consider whether the defendants are entitled to qualified immunity on the plaintiff's remaining constitutional claims. Moreover, because the court has already found that the defendants are entitled to summary judgment in their favor on the plaintiff's free exercise claim, the defense of qualified immunity on that claim need not be considered herein.

### B. Plaintiff's Motion for Summary Judgment.

As discussed above, there is a genuine material factual dispute about whether the defendants' reasonably determined that the plaintiff was not sincere in his religious beliefs. Given that dispute, the plaintiff is not entitled to summary judgment on his free exercise, equal protection or RLUIPA claims. The plaintiff has not established that he is entitled to judgment as a matter of law on any of his other claims. Accordingly, the plaintiff's motion for summary judgment will be denied.

### V.  Pretrial Conference.

The discovery period has closed, the deadline for filing dispositive motions has passed and this Memorandum and Order addresses the pending motions in this case. The case is ready to proceed to trial as noted below.

## VI. Conclusion.

**IT IS HEREBY ORDERED THAT:**

**(1)**   The plaintiff's motion for default/judgment, **(Doc. 78)**, is **DENIED.**

**(2)**   The defendants' motion for leave to amend their answer to the amended complaint, **(Doc. 79)**, is **GRANTED.**

**(3)**   Within **five (5) days** of the date of this Order, the defendants may file the proposed amendment to their answer that is attached to their motion for leave to amend.

**(4)**   The plaintiff's Eighth Amendment and Fifth Amendment claims are dismissed *sua sponte* for the plaintiff's failure to state a claim upon which relief can be granted.

**(5)**   The defendants' motion for summary judgment, **(Doc. 66)**, is **GRANTED IN PART AND DENIED IN PART.**  To this extent, the defendants are granted summary judgment on basis of the statute of limitations on the plaintiff's 42 U.S.C. §1983 claims that accrued prior to April 2, 2001. The plaintiff's claim for injunctive relief in the form of an exemption from the Grooming Policy regarding his hair is dismissed as moot. The defendants are granted summary judgment on the plaintiff's free exercise claims.   In all other respects the defendants' motion for summary judgment is denied. Based upon the court's ruling,

the following claims remain: the plaintiff's RLUIPA claim, the plaintiff's Fourteenth Amendment equal protection claim, and the plaintiff's §§ 1985 and 1986 claims.

**(6)** The plaintiff's motion for summary judgment, **(Doc. 69)**, is **DENIED.**

**(7)** A final pretrial conference shall be held on **Friday, June 30, 2006 at 10:30 A.M.** in Courtroom No. 1, at the Max Rosenn United States Courthouse, 197 South Main Street, Wilkes-Barre, Pennsylvania.

**(8)** The parties shall file their pretrial memoranda in accordance with Local Rule 16.6 on or before **June 23, 2006.**

**(9)** The Jury Trial will begin on **Monday, July 17, 2006 at 9:30 A.M.** in Courtroom No. 1, at the Max Rosenn United States Courthouse, 197 South Main Street, Suite 161, Wilkes-Barre, Pennsylvania.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** March 31, 2006
O:\shared\Memorandums\2003 MEMORANDUMS\03-0550.01.wpd